[887 NYS2d 435]

LESLIE KAHN, Petitioner, v DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents.

Supreme Court, New York County, September 8, 2009

### APPEARANCES OF COUNSEL

*New York Civil Liberties Union*, New York City (*Arthur N. Eisenberg* and *Adriana C. Pinon* of counsel), for petitioner. *Michael A. Cardozo, Corporation Counsel*, New York City (*Courtney B. Stein* and *Basil C. Sitaras* of counsel), for respondents.

### OPINION OF THE COURT

ALICE SCHLESINGER, J.

This CPLR article 78 proceeding presents the challenging issue of determining the precise reach of the decision by the Court of Appeals in *Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y.* (71 NY2d 763 [1988]). Other significant issues are also raised. The predicate facts are as follows.

Petitioner Leslie Kahn began working with the New York City Department of Education as a social worker at Williamsburg High School in February 2005. She worked there for 2½ years, receiving satisfactory ratings on her official evaluation as well as a letter of appreciation from the principal for work on a school field trip "above and beyond 'the call of duty.'"

In June 2007, Ms. Kahn accepted a position as a school social worker at Khalil Gibran International Academy. She began work in July when Deborah Almonstaser was principal. Ms. Almonstaser resigned in August and respondent Danielle Salzberg became interim acting principal.

Almost immediately, Ms. Salzberg criticized Ms. Kahn's work, complaining about matters such as alleged incidences of lateness or unexcused absence and a missed parent meeting. Ms. Kahn responded with explanations and other information dem-

onstrating that, based on her records, the allegations were incorrect.

On December 12, 2007, Ms. Salzberg conducted Ms. Kahn's annual observation to evaluate her performance. As noted above, Ms. Kahn had received only satisfactory ratings at the earlier school. Ms. Salzberg conducted the observation alone, even though the collective bargaining agreement required that the social work supervisor with a clinical license participate in the evaluation and sign the official observation report. Principal Salzberg gave Ms. Kahn an unsatisfactory rating (U-Rating) by cover letter dated December 21, 2007. Believing the evaluation to be fatally flawed due to the absence of the social work supervisor, the union advised Ms. Kahn not to challenge it.

Based on the negative evaluation and Ms. Salzberg's recommendation, superintendent Rosemary Ann Stuart wrote to Ms. Kahn on December 21, 2007 to advise her that she was denying her certification of completion of probation and terminating her service effective January 25, 2008. Had she not been terminated, Ms. Kahn would have been eligible for tenure in early February, three years after she began work. (Education Law § 2573 [1] [a].) Significantly, the superintendent's December 21 termination letter advised Ms. Kahn of her right to challenge the decision, stating that "[u]nder the Collective Bargaining Agreement between the Department of Education and the United Federation of Teachers, you are entitled to the review procedures as prescribed in Article 4, Section 4.3.2C of the Bylaws of the Department of Education."

Ms. Kahn did appeal the discontinuance of her probationary service by checking the relevant box on the form provided by the Office of Appeals and Review.[1] The hearing before the Chancellor's Committee was held on April 9, 2008 wherein both the U-Rating and the discontinuance of service were addressed (the transcript is attached as exhibit G to the petition). By letter dated May 9, 2008, the Department of Education reaffirmed the denial of the certification of completion of probation.

This article 78 proceeding was commenced by filing on September 9, 2008. Respondents cross-moved to dismiss on four grounds: (1) petitioner failed to file a notice of claim; (2) the proceeding is barred by the statute of limitations; (3) petitioner

1. Ironically, the parties agree that, had Ms. Kahn also checked the box to indicate that she was appealing the U-Rating, that appeal would have tolled the statute of limitations pending the determination of the appeal, and this proceeding would have been timely commenced. (See discussion below.)

failed to exhaust administrative remedies; and (4) failure to state a cause of action.

In the course of this litigation and at the court's request, petitioner learned for the first time the details of the recommendation of the Chancellor's Committee following the hearing. Included among the papers exchanged was an April 16, 2008 memorandum from Virginia Caputo, director of the Office of Appeals and Review, to superintendent Stuart. The memorandum included a copy of the Committee's advisory report.

Particularly noteworthy is the fact that two of the three Committee members—the majority—did not agree with the recommendation to terminate Ms. Kahn's service. The chair did agree, but with significant reservations. For example, he described the termination as "severe" and characterized Ms. Kahn's case as "powerful," noting that she had presented documents which "seemed to successfully refute" the principal's documents. In the end, however, he did concur with the recommendation to discontinue Ms. Kahn's service, as did the superintendent.

No Notice of Claim is Required in This Proceeding

Pointing to Education Law § 3813 (1), respondents urge this court to dismiss this proceeding because petitioner has failed to file a notice of claim. The cited provision states in relevant part that

"[*n*]*o action or special proceeding, for any cause whatever* . . . or claim against the district or any such school, or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education . . . or any officer of a school district [or] board of education . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to *the governing body of said district or school within three months after the accrual of such claim,* and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof *for thirty days after such presentment.*" (Emphasis added.)

In addition to citing the broad language highlighted above at the very beginning of the statute, respondents rely on cases such as *Matter of Cayuga-Onondaga Counties Bd. of Coop. Educ.*

*Servs. v Sweeney* (89 NY2d 395, 400 [1996]), which espouse the general principle that a notice of claim is a condition precedent to suit where the party seeks to enforce "private rights and duties" rather than "vindicate a public interest." Petitioner's claim seeks to enforce a purely private right, respondents contend, as she seeks to be reinstated to her social work position in the school system.

However, respondents are oversimplifying the rule and thereby misapplying it here. In discussing the private/public distinction, the *Cayuga* court gave examples which illustrate the distinction and suggest that a notice of claim is required only when money damages are sought. As a matter of "public interest" it cited a discrimination challenge to a provision in a collective bargaining agreement which mandated inferior treatment of pregnancy and childbirth absences as compared to other disabilities. (*Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.,* 35 NY2d 371 [1974], *rearg denied* 36 NY2d 807 [1975].) As a "private right," it cited a plenary civil damages action in which the plaintiff sought personal financial redress for alleged wrongful conduct directed only toward the plaintiff. (*Mills v County of Monroe,* 59 NY2d 307, 312 [1983], *cert denied* 464 US 1018 [1983].)

Equating a "private right" with a damages action is highly significant. Whereas petitioner readily acknowledges in her memorandum of law (at 3-4) that the case law is clear in requiring that a notice of claim be filed in article 78 proceedings which seek monetary damages, a notice of claim is *not* required where, as here, petitioner seeks equitable relief only, namely, reinstatement to her position in the school system. This interpretation is wholly consistent with the above-quoted provision in Education Law § 3813 (1) governing notices of claim, which ends by describing the subject claims as ones in which "the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment."

Petitioner also points to relevant case law in support of her assertion that no notice of claim is required where, as here, only equitable relief is sought. A prime example is *Ruocco v Doyle* (38 AD2d 132 [2d Dept 1972]), cited with approval by the Court of Appeals in *Union Free School Dist.,* discussed above, which in turn was relied upon by the Court of Appeals in 1996 in *Cayuga.* The plaintiff in *Ruocco* was a tenured school principal who had

claimed that wrongful conduct by the Board of Education had compelled him to resign, and that the Board had improperly refused to allow him to withdraw his resignation. He then commenced a declaratory judgment action asking the court to find his purported resignation null and void. The lower court denied the Board's motion to dismiss for failure to file a notice of claim, and the Appellate Division affirmed.

In reaching its decision, the appellate court looked at the final phrase in Education Law § 3813 (1) which speaks of claims against an officer or body "having the power to adjust or pay said claim." The court described this language as "the foundation stone for the decisions which have held that the requirements of section 3813 are applicable only to claims against a district's property or to demands for payment of money by a district and are not otherwise applicable" (38 AD2d at 133-134). The court then firmly added: "We agree with the rationale of those decisions." (*Id.* at 134.) Finding that Ruocco's action did "not involve a claim for monetary damages but only for a declaration of his status as a tenured nonresigned employee," the court concluded that "the service of a notice of claim pursuant to section 3813 of the Education Law is not a condition precedent to the institution or maintenance of the action." (*Id.* at 134.)

Wholly unavailing is respondent's attempt to characterize this action as a damages action. Petitioner's counsel unequivocally disagrees in her memorandum of law (at 5), stating that

"[p]etitioner, in this case, does not seek any damages . . . Instead, she prays only for equitable relief in the form of reinstatement, an order vacating Respondents' decisions and directing they comport with the terms of the collective bargaining agreement, and a declaration that Respondents' actions violated her due process rights. Back pay and other benefits are not even mentioned."

The single decision construing a request for "such other and further relief" as a request for damages is a Fourth Department case which is neither persuasive nor binding on this court. (*Matter of McClellan v Alexander Cent. School Bd. of Educ.*, 201 AD2d 898 [1994].)

Nor does the request for counsel fees trigger the need for a notice of claim. That claim, under 42 USC § 1988, is tied to petitioner's claim under 42 USC § 1983, and the First Department has made clear that a claim "under section 1983 does not

require service of a notice of claim." (*Bumbury v City of New York*, 62 AD3d 621, 625 [1st Dept 2009], citing *Rapoli v Village of Red Hook*, 41 AD3d 456, 457 [2007].)

Accordingly, respondents' motion to dismiss for failure to file a notice of claim is denied.

Petitioner Timely Commenced This Proceeding

■ As implied at the very beginning of this decision, the most vigorous debate between the parties involves the import of the 1988 decision by the Court of Appeals in *Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y.* (71 NY2d 763 [1988]), and its application to respondents' motion to dismiss based on the statute of limitations. Both parties necessarily agree that this article 78 proceeding is subject to CPLR 217 (1) which requires that the proceeding "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner."

Citing to *Frasier*, respondents argue that a decision terminating the service of a probationary employee becomes "final and binding" on the effective date of the termination, and that the time to commence a proceeding is not extended by an administrative appeal of that decision. Thus, respondents argue that based on the January 25, 2008 termination date, this proceeding should have been commenced in late May 2008 and the September 9, 2008 commencement is untimely.

Petitioner counters that *Frasier* should be limited to the facts and circumstances of that case, and that this case in any event falls within certain exceptions carved out by the *Frasier* court due to a statutory violation and a procedural defect. She argues that the time should begin to run upon her receipt of the May 9, 2008 letter from the Department of Education reaffirming her termination following the completion of the administrative review process. Applying that rule, this proceeding was timely commenced within four months thereafter, on September 9, 2008.

The debate is an interesting one which cries out for resolution by our higher courts; for while both the Second Department and the First Department have cited *Frasier* for the broad proposition that an administrative appeal does not extend the time to commence an article 78 proceeding, a close look at *Frasier* indicates, in this court's opinion, that the Court of Appeals did not dictate, or even suggest, such a sweeping and preclusive proposition of law. Therefore, this court respectfully urges the First Department to take a second look at *Frasier*.

The petitioner in *Frasier* was a probationary teacher who was notified by letter from the Chancellor dated June 28, 1984 that his service was terminated effective September 4, 1984. Petitioner sought administrative review of the decision pursuant to the terms of the collective bargaining agreement and the Bylaws of the Panel for Education Policy of the Department of Education of the City School District of the City of New York (the bylaws of the Board of Education), which led to a hearing before a committee of three that made findings and recommendations to the Chancellor. Thereafter, the Chancellor reversed his position and reinstated petitioner to his probationary status. Petitioner then commenced an article 78 proceeding seeking to make his reinstatement retroactive to September 4, 1984, the original termination date, and to recover full seniority credit and back pay for the seven-month period from that date until March 25, 1985 when the review was complete. The lower court granted the petition and the Appellate Division, Second Department affirmed, reasoning that the Chancellor's reversal rendered his initial decision an "unlawful ouster." (130 AD2d 746 [1987].) Thus, the exclusive issue presented at every stage of the proceeding was petitioner's entitlement to back pay.

Apparently in response to that strong language, and mindful of public policy implications, the Court of Appeals reversed and dismissed the petition. The Court devoted pages to discussing the broad statutory authority granted to the Board and the Chancellor as its designee to discharge probationary employees and make tenure decisions, thus negating any implication that the original action was an "unlawful ouster." (71 NY2d at 763-766.) The Court then turned to the very narrow question before it: namely, whether anything in the review procedure established in the bylaws made the Chancellor's original decision "nonfinal" so as to entitle the petitioner to retroactive reinstatement and back pay. (*Id.* at 767.) Describing the governing section in the bylaws as "procedural only," the Court maintained its focus on the back pay issue, declaring that the bylaw "contains no provision concerning reinstatement or back pay, and does not purport to affect the teacher's substantive rights under the statute." (*Id.*)

The Court of Appeals then went on (*id.* at 767) to reveal the broader public policy concerns underlying its holding:

> "To adopt petitioner's position that a section 5.3.4 review postpones the effective date of the Chancellor's action until completion of the review procedure

would have anomalous consequences. A probationary teacher could, although validly removed from the teaching rolls by action of the Chancellor under Education Law § 2573 (1) (a) and performing no services for the school system, become entitled to full salary during the review process, regardless of its eventual outcome. To obtain such entitlement, a discontinued teacher would have only to institute review under section 5.3.4. We need not consider the constitutional implications of such a construction, for it was clearly never intended."

The Court concluded by emphasizing that in the particular case before it, petitioner did not dispute the Chancellor's authority to act, nor claim any statutory or constitutional violation or procedural defect related to the decision. The claim was only that the decision was "incomplete" and "ineffective" for the purposes of back pay until after the review had been completed. (*Id.* at 768.)

Nowhere in the lengthy *Frasier* opinion is the statute of limitations or CPLR 217 even mentioned. Nevertheless, and with no discussion at all, the Second Department relied on *Frasier* to affirm a trial court decision dismissing as untimely an article 78 proceeding commenced by a probationary teacher more than four months after the discharge. (*Matter of Schulman v Board of Educ. of City of N.Y.*, 184 AD2d 643 [1992].) Using an extremely broad stroke which this court believes was never intended by the *Frasier* court, the *Schulman* court cited *Frasier* and simply declared (at 644) that "[t]here is no merit to the petitioner's argument that the review of this administrative determination served to extend the four month limitations period." More recently, the First Department cited *Frasier* for a similarly sweeping statement with little, if any, discussion in *Matter of Strong v New York City Dept. of Educ.* (62 AD3d 592 [2009]), *Matter of Triana v Board of Educ. of City School Dist. of City of N.Y.* (47 AD3d 554 [2008]) and *Matter of Lipton v New York City Bd. of Educ.* (284 AD2d 140 [1st Dept 2001]). In other words, both Departments have given *Frasier* a meaning which, in this court's opinion, was never intended.

The interpretation of *Frasier* espoused by these decisions merits a second look in light of the highly persuasive reasoning in *Matter of Abamont v Cortines* (164 Misc 2d 599 [Sup Ct, Kings County 1995]), which was adopted by the court in *Munoz v Vega*

(2001 NY Slip Op 40286[U] [Sup Ct, Bronx County 2001], *affd* 303 AD2d 253 [1st Dept 2003]).[2]

Petitioner in *Abamont* was a probationary assistant principal who, like the petitioner herein, was denied a certification of completion of probation and terminated from service. Respondents moved to dismiss the article 78 proceeding as untimely; although the proceeding had been commenced within four months of the Chancellor's decision following administrative review, it was more than four months after the termination date. The issue squarely presented was whether the statute of limitations began to run from the effective date of the termination as set forth in the initial decision, or whether instead it ran from the decision after review. After thoroughly analyzing *Frasier* and numerous other decisions, the court concluded that the limitations period began to run upon petitioner's receipt of the decision following the administrative review. A summary of that analysis and the relevant principles of law follows.

The statute of limitations does not begin to run until "the agency has issued an unambiguously final decision that puts the petitioner on notice that all administrative appeals have been exhausted." (*Matter of Mateo v Board of Educ. of City of N.Y.*, 285 AD2d 552, 553 [2d Dept 2001], quoting *Matter of Carter v State of N.Y., Exec. Dept., Div. of Parole*, 95 NY2d 267, 270 [2000].) The burden is on the agency to make the finality of its decision clear; any ambiguity will be resolved against the agency so as not to deny a party his day in court. (*Mundy v Nassau County Civ. Serv. Commn.*, 44 NY2d 352 [1978]; *see also Matter of Biondo v New York State Bd. of Parole*, 60 NY2d 832 [1983]; *Matter of Webster v Police Dept. of City of N.Y.*, 59 AD3d 295 [1st Dept 2009].)

The *Abamont* court concluded, and this court agrees, that the form letter sent to the employee created an ambiguity as to finality for purposes of commencing judicial review. While the letter in both cases did state that certification of completion of probation was being denied and service terminated, neither stated that the determination was final and binding for the purposes of judicial review. To the contrary, the letter prominently stated that the employee was entitled to pursue the administrative review procedure. Specifically in this case, the letter stated: "Under the Collective Bargaining Agreement be-

---

**2.** It is interesting to note that *Abamont* was decided by Justice Elliot Golden, the same Justice who initially decided *Frasier*.

tween the Department of Education and the United Federation of Teachers, you are entitled to the review procedures as prescribed in Article 4, Section 4.3.2C of the Bylaws of the Department of Education."[3]

As the *Abamont* court stated (at 602): "This statement, on its face, is unambiguous in inferring that this is the next step in the administrative appeal process." That process is begun by filing a form with the Office of Appeals and Review. It leads to a hearing with the right to adduce evidence and call and confront witnesses, with the assistance of a union representative. The process is a significant one, negotiated by the union and included in the collective bargaining agreement. To compel an employee to commence an article 78 proceeding before the administrative appeal has been determined would render the contractually guaranteed administrative review process virtually meaningless.

Aware of the *Schulman* decision issued by its own appellate court, the *Abamont* court addressed the issue head on. After discussing the focus of *Frasier* on the back pay issue, the court concluded that the *Schulman* court had applied the finality concept discussed in *Frasier* "in an entirely different context to a Statute of Limitations question" (*Abamont*, 164 Misc 2d at 603) and raised concerns about such a far-reaching application:

> "The holding in *Schulman* warrants a revisiting and/or amplification, for it either creates a trap for the unwary or places the aggrieved employee on the horns of a dilemma in having to either pursue two remedies at the same time: the administrative review procedure under section 5.3.4 of the bylaws of the Board of Education and an article 78 proceeding, or select one and forego his right to the other. The twofold problem in the selection process is (1) the employee has to be made aware that there is such a choice, and (2) he may be without benefit of legal counsel at that time since the section 5.3.4 review procedures do not allow an attorney to represent him at the hearing. To further complicate this 'Catch-22' situation, a judicial proceeding under article 78 may be subject to dismissal if the petitioner has not yet exhausted his administrative rem-

---

3. *Abamont* and *Frasier* refer to section 5.3.4C of the bylaws of the Department of Education, which was subsequently renumbered 4.3.2C.

edies by way of a section 5.3.4 review."[4] (*Id.*)

Bronx Supreme Court Justice Stanley Green adopted the *Abamont* reasoning wholeheartedly in *Munoz v Vega* in 2001 and discussed it and *Frasier* at length. However, after finding that Munoz and some of the other petitioners had timely commenced the article 78 proceeding in circumstances similar to the case at bar, he denied the petition on the merits. While the First Department had the opportunity to deal with the implications of *Frasier* regarding the statute of limitations issue, it felt no need to do so, preferring instead, to affirm the dismissal on the merits, simply saying: "In view of the foregoing, the timeliness of petitioners' various claims is academic." (303 AD2d 253, 254 [2003].) In doing so, it should be noted that the Appellate Division did not reject the trial court's reasoning on this issue.

Other compelling reasons exist for finding that the statute of limitations on a claim of discontinuance of probationary service runs from the decision after administrative review. The law is clear that an employee's appeal of a U-Rating, made with or without an appeal of a discontinuance, will stay the running of the statute of limitations as to the issue of the U-Rating. (*See e.g. Matter of Andersen v Klein*, 50 AD3d 296 [1st Dept 2008]; *Matter of Mateo v Board of Educ. of City of N.Y.*, 285 AD2d 552 [2d Dept 2001]; *Matter of Bonilla v Board of Educ. of City of N.Y.*, 285 AD2d 548 [2d Dept 2001].) The rationale for treating an appeal of a U-Rating differently than an appeal of a discontinuance for purposes of the statute of limitations is not apparent in the bylaws and has never been fully explained by the appellate courts.

In fact, the distinction is hard to understand, as it appears that the relevant documents and governing rules treat the two types of appeals very similarly. Both appeals are governed by article 4 of the bylaws of the Department of Education, entitled "Reviews related to Ratings and/or Recommendations re Probationary Service of Pedagogical Personnel." Section 4.3.1 governs "Appeals re Ratings" and states that an employee receiving a rating that is not satisfactory *"shall be afforded the opportunity for review* in the manner set forth herein and in procedures established by the Chancellor" (emphasis added). The procedure involves a review by a committee designated by the Chancellor, with the final decision made by the Chancellor.

---

**4.** In fact, respondents in the case at bar did move to dismiss for failure to exhaust administrative remedies relating to the U-Rating. See below.

Section 4.3.2 governs "Appeals re Discontinuance of Probationary Service" and similarly states that an employee whose probationary service has been discontinued *"shall have a review of the matter"* (emphasis added). The procedure involves a review by a duly appointed committee, with the final decision by the superintendent or the Chancellor in accordance with the collective bargaining agreement. The governing section of the collective bargaining agreement appears to be section D of article 21 entitled "Discontinuance of Probationary Service and Appeals of Unsatisfactory Ratings."

On the practical level, the Office of Appeals and Review provides the same single form for an employee to request a challenge of a U-Rating, the discontinuance of service, or both. No distinction whatsoever is made on the form between the two procedures, and the same office apparently handles both matters. To the average public employee unrepresented by counsel, no meaningful basis exists to distinguish between the two procedures, and there is nothing to alert the employee that a longer time is available to obtain counsel and commence an article 78 proceeding if the U-Rating is challenged in addition to the discontinuance of service.

What is more, language in *Frasier* itself suggests that the Court of Appeals viewed the decision as a limited one. As indicated above, *Frasier* concluded by suggesting that the court might have reached a different result if a statutory or constitutional violation or procedural defect had been alleged. Petitioner here is asserting a statutory violation in that she was denied 60 days' advance notice before her termination as required by Education Law § 2573 (1) (a). The right to 60 days' notice is a significant right (*see Matter of Tucker v Board of Educ., Community School Dist. No. 10*, 82 NY2d 274 [1993]), the deprivation of which petitioner is entitled to litigate in this proceeding. Contrary to respondents' claim, petitioner is not limited to additional pay for a violation of that right. Respondents' reliance for that claim on *Matter of Pascal v Board of Educ. of City School Dist. of City of N.Y.* (100 AD2d 622 [2d Dept 1984]) is misplaced, as the decision in no way indicates that additional pay is the employee's sole remedy.

Petitioner also claims that her rights under the collective bargaining agreement were violated in that the Committee considered a U-Rating issued by the principal without the participation of a social work supervisor.

Subsequent case law also supports a tolling of the statute of limitations pending the completion of the administrative review

process where a violation or procedural defect is alleged. Thus, for example, in *Matter of Persico v Board of Educ., City School Dist., City of N.Y.* (220 AD2d 512 [2d Dept 1995]), the court found that the statute of limitations for the proceeding to challenge the discontinuance of petitioner's probationary employment began to run after the administrative review procedure had been completed because the petitioner was claiming that she had been denied certain procedural rights in the proceeding before the Chancellor's Committee.

Accordingly, respondents' motion to dismiss this proceeding as barred by the statute of limitations is denied.

However, even apart from this determination, some of petitioner's claims must survive dismissal on timeliness grounds. This proceeding is a hybrid proceeding which raises claims brought under CPLR article 78, as well as claims brought pursuant to 42 USC § 1983.[5] Citing *Matter of Beers v Incorporated Vil. of Floral Park* (262 AD2d 315 [2d Dept 1999]), petitioner correctly asserts that the claims asserted under each statute are subject to their own distinct statute of limitations.

*Beers* is, in fact, quite similar to the case at bar, and respondents make no effort whatsoever to distinguish it. The petitioner in *Beers* claimed that she had been wrongfully terminated without a hearing from her position as a clerk at the public library. She commenced a hybrid proceeding seeking reinstatement pursuant to article 78 and damages pursuant to 42 USC § 1983. Applying the four-month statute of limitations in CPLR 217, the lower court dismissed all the claims, but the appellate court reinstated the 1983 claim, finding it "timely because the Statute of Limitations for that cause of action is three years" (262 AD2d at 316). The same rationale would apply here to allow the court to sever the 1983 claim, if necessary to survive a timeliness challenge.

The survival of the 1983 claim on timeliness grounds also finds support in *Pauk v Bd. of Trustees of the City Univ. of N.Y.* (654 F2d 856 [2d Cir 1981]). Discussing in detail the issue of the applicable limitations period, the court stated:

> "Because Congress has not provided a federal statute of limitations for actions brought under [§] 1983, we must apply the most appropriate state statute of limitations. We have previously held that the appropriate statute of limitations for [§] 1983 actions

---

5. The merits of the 1983 claim are addressed below.

brought in New York is CPLR [§] 214 (2), which specifies a three-year limitations period for actions to recover upon a liability created or imposed by statute." (654 F2d at 861 [citations omitted].)

After considering recent case law, the court determined to adhere to that principle. Further, it expressly declined to apply the four-month period for article 78 proceedings set forth in CPLR 217, finding the brevity of that period "singularly inappropriate for [§] 1983 actions" and ample reason to allow a petitioner to simultaneously assert claims under article 78 and section 1983. (*Id.* at 863.) Considering the force and clarity of those statements, respondents' attempt to distinguish *Pauk* based on the federal forum is unpersuasive. The 1983 claim in this case was timely commenced.

This Proceeding is Not Barred by the Exhaustion Doctrine

■ Wholly unavailing is respondents' claim that this proceeding must be dismissed because petitioner did not file a separate administrative challenge to the U-Rating she received before her employment was terminated. Respondents acknowledge that petitioner has exhausted all administrative remedies available to challenge the December 21, 2007 decision by the superintendent denying her certification of completion of probation and terminating her service. To the extent the December 21 decision was made in partial reliance on the U-Rating, petitioner fully addressed the rating at the Chancellor's hearing regarding her termination.

As respondents properly note, the bylaws of the Department of Education permit an employee to administratively challenge a U-Rating. Such a challenge could be critical in a case in which the employee remains on staff after having received the rating. In contrast, in a case such as this where the U-Rating is closely followed by a termination of employment and the employee challenges that termination, a separate challenge of the U-Rating cannot be viewed as a condition precedent to the article 78 proceeding challenging the discontinuance.

Respondents have not pointed to a single rule, regulation, bylaw or case which compels an employee such as petitioner to separately challenge a U-Rating when the ensuing termination of employment is being fully challenged. Under these circumstances, this court excuses any failure by petitioner to exhaust any administrative remedies available in connection with the U-Rating. (*Cf. Lehigh Portland Cement Co. v New York State*

*Dept. of Envtl. Conservation*, 87 NY2d 136 [1995] [lower court erred in dismissing declaratory judgment action based on failure to exhaust administrative remedies where respondent's position was clear and pursuing administrative remedies would have been futile].)

Accordingly, the motion to dismiss on the exhaustion ground is denied.

### Petitioner May Pursue Her Claim under 42 USC § 1983

■ It is well settled that in considering a pre-answer motion to dismiss such as this one, the allegations in the petition must be deemed to be true and accorded every favorable inference. (*See e.g. 219 Broadway Corp. v Alexander's, Inc.*, 46 NY2d 506 [1979].) Applying that standard here, this court finds that petitioner's claims under 42 USC § 1983 are sufficiently pleaded to survive dismissal.

To maintain her claim under section 1983, petitioner must allege that she was deprived of a property or liberty interest without due process of law. (*Ciambriello v County of Nassau*, 292 F3d 307, 313 [2d Cir 2002].) Here, petitioner is guaranteed certain rights and benefits under her collective bargaining agreement with respondent Department of Education, such as the right to have an in-discipline supervisor present during an evaluation. As the *Ciambriello* court recognized, a collective bargaining agreement "may give rise to a property interest in continued employment." (292 F3d at 314.) Respondents argue that probationary employees have no such property interest. However, there is no dispute that petitioner here is covered by the collective bargaining agreement, and all the cases cited by respondents are readily distinguishable from the case at bar.

Similarly unavailing is respondents' claim that petitioner cannot establish a claim for deprivation of a liberty interest because the stigma attached to poor work performance is not enough. However, petitioner here alleges more than criticism of her work performance; she asserts that respondent's actions have constructively barred her from any future employment with the Department of Education. The allegations are sufficient to survive dismissal at this stage of the litigation. (*See e.g. Brandt v Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk County, N.Y.*, 820 F2d 41, 45 [2d Cir 1987] [likelihood that potential employers would access a personnel file and choose

not to hire a prospective employee based on material in the file is sufficient to state a cause of action].)

Accordingly, it is hereby ordered that respondent's cross motion to dismiss this article 78 proceeding is denied.